**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Hobert Puryear KEEN,
Defendant-Appellant.**

**No. 74–1743.**

United States Court of Appeals,
Sixth Circuit.

Feb. 5, 1975.

**1274**

Richard H. Lewis, Lovett, Lewis, Johnson & Shapiro, Benton, Ky., William E. Scent, Keith, Scent, Osborne & Deatherage, Hopkinsville, Ky., for defendant-appellant.

George J. Long, U. S. Atty., James H. Barr, Louisville, Ky., for plaintiff-appellee.

Before CELEBREZZE, PECK and McCREE, Circuit Judges.

PER CURIAM.

This is an appeal from a jury conviction of receiving stolen government property in violation of 18 U.S.C. § 641. Appellant does not contend that the evidence was insufficient to permit the jury to return a verdict of guilty but seeks reversal of his conviction on the grounds that the government improperly employed subpoenas for the purpose of commanding the attendance of prospective witnesses at a unilateral pretrial interview.

In preparation for the trial, the government attorney obtained blank subpoenas from the district court clerk and issued them to prospective trial witnesses commanding attendance at a pretrial interview at his office. When appellant discovered that the government had caused subpoenas to be served for this purpose, he sought an order permitting him to subpoena the same witnesses for a pretrial interview or, alternatively, to require the government to furnish him copies of all written statements given by the witnesses or summaries of the interviews. The district court, in denying the motion, stated, "This has been a long-standing practice within the Department of Justice which we will allow until directed to do otherwise by a higher court."

Appellant contends that he was prejudiced by this abuse of the subpoena power in three ways: (1) that his former wife was asked questions based upon the pretrial interview for the purpose of impeaching her testimony; (2) that, like his co-defendant, he might have pleaded guilty to the charge and might have received a sentence less severe than eighteen months had he been permitted to attend the pretrial interview; and (3) that a preview of the witnesses' testimony would have furnished him grounds for moving for a severance of trial on one count of the indictment.

There is no question that the government's action of obtaining blank trial subpoenas from the court clerk and of using them to compel witnesses to attend an interview miles from the place of trial and at a proceeding other than an authorized one was highly improper. Rule 17 of the Federal Rules of Criminal Procedure provides, in relevant part,

"(a) . . . A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each per-

son to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. . . .

(c) . . . The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."

This rule permits a subpoena *ad testificandum* or a subpoena *duces tecum* to be issued only for the purpose of compelling the attendance of witnesses or the production of evidence at a formal proceeding. Only in the case of a subpoena *duces tecum* may the court direct that the evidence subpoenaed be produced for inspection before trial or before it is to be offered in evidence. The government's action was clearly unauthorized and improper. United States v. Hedge, 462 F.2d 220 (5th Cir. 1972). *See also* United States v. Standard Oil, 316 F.2d 884 (7th Cir. 1963); United States v. Stirone, 168 F.Supp. 490 (W.D.Pa.1957).

 We do not, however, reverse appellant's conviction. He does not offer any explanation why a severance of a single count of the indictment would have been requested or granted had he been permitted to attend the pretrial interview. Moreover, there is no reason to believe that appellant would have pleaded guilty and would have received a less severe sentence had he been permitted to attend the pretrial interview. We do believe, however, that the government's attempted impeachment of appellant's former wife based upon statements that she allegedly made at the pretrial interview was prejudicial. A short excerpt from the government's examination of this witness is sufficient to show the dangers inherent in the impermissible subpoena practice engaged in by the Department of Justice in this case:

Q. Were you—have we talked before about this case?

A. You and I?

Q. Yes.

A. Yes Sir.

Q. Uh, did you give any different answers at that time than you did just then?

A. No.

Q. Are you sure of that?

A. Positive.

\* \* \* \* \* \*

Q. Did you not say to him that you would positively not go the the Fort Campbell area with him again because you believed that these field jackets purchased by your husband were stolen?

A. No, I did not.

Q. You did not say that to Agent Hilliard Thorpe of the FBI?

A. No Sir; I did not.

Q. And you are telling the truth right now?

A. Yes Sir; I am.

Q. Are you aware of what the word "perjury" means?

A. Yes Sir; I am.

Q. Well, did you tell the truth to Agent Thorpe when you were interviewed by him?

A. Yes Sir.

Q. Did you not tell me last Tuesday, the nineteenth of March, that you inquired of your husband as to whether these jackets were stolen?

A. I just told you now I did.

Q. Okay; and what did he say?

A. He said they were not.

Q. And did you not tell him that you wouldn't go with him anymore because you thought the jackets were stolen?

A. I did not.

Q. Did you not tell Agent Thorpe that and did you not tell me that on the nineteenth?

A. I did not tell you that, no Sir; I didn't.

Q. And I would be lying then if I said you did, and Agent Thorpe would be lying if he said you did; is that correct?

A. Yes Sir.

Q. Did you not say to Agent Thorpe that you believed that the field jackets were very likely stolen due to the circumstances under which your husband bought them?

A. No Sir; I told him I had no way of knowing if those field jackets were stolen.

Q. Didn't you tell him that you believed due to the circumstances that those jackets were stolen.

A. No Sir; I told him I didn't like the way the field jackets were bought.

Q. You didn't—you didn't mention the word "stolen"?

A. No Sir.

Q. That you thought they were stolen?

A. No Sir; I told him I had no way of knowing.

Q. And you didn't tell me that then on the nineteenth of March when we talked?

A. No Sir.

Q. And if I said you did I'd be lying and if Agent Hilliard Thorpe said you did, he'd be lying; is that correct?

A. Yes Sir.

Q. So, you are telling the truth and both of us have lied or would lie twice then; is that correct?

A. I'm telling you the truth.

Even though we find that appellant was prejudiced in this respect, he made no objection to the testimony. Accordingly, appellant must be deemed to have waived the error which we regard as harmless in light of the other abundant evidence of guilt. *Cf.* United States v. Hedge, *supra.*

Affirmed.